Yes, Judge, I'd like to reserve five minutes for rebuttal. We have 20 minutes on the argument, is that correct? Normally we give you 15 minutes. I'll still reserve five for the rebuttal. Okay, let's proceed. All right. May it please the Court and Council, once again, my name is David Jenkins for the Plaintiff Appellants Capital Construction Solutions and Country Mutual Insurance Company. Your Honors, plaintiffs seek a reversal of the summary judgment that was entered in this declaratory judgment case, the insurance case. Plaintiffs also are seeking the entry of the summary judgment in its favor and a remand for further proceedings as to the question of contribution and damages. The Circuit Court, Your Honors, had incorrectly concluded that the selective insurance policy, which was a primary general liability insurance policy, only provided excess coverage for capital construction with respect to the injury case that was filed. The decision was based on another insurance condition in the policy that the Court read that converted this primary policy into what the trial court believed was an excess policy. Your Honor, the trial court incorrectly reached its conclusion that this was an excess policy, despite a contractual requirement between the contractor and the subcontractor that required general liability insurance coverage for this project, despite the fact that selective had also a separate umbrella or excess policy, which would have made the excess coverage redundant. Also, despite the fact that there was a targeted tender by capital, the insured to selective, which would have rendered the other insurance provision meaning inoperative. And also then, despite the fact that there was other insurance provisions in the other relevant insurance policies by Westfield and Country Mutual that rendered all of them basically excess coverage, which meant selectives policy should not be considered an excess policy. Your Honor, we believe this case is about apples and oranges. An apple is an apple, an orange is an orange. A true excess policy or an umbrella policy is an excess policy. A commercial general liability insurance policy is fundamentally a primary policy. It's providing dollar one defense coverage and indemnification coverage when claims potentially fall in that policy. A policy such as selectives that has this other insurance condition, which makes it possibly an excess application, that policy is still fundamentally a primary insurance policy. And as a fundamentally primary insurance policy, it needs to or it acts like that when it comes to targeted tender rule and determining the sharing of coverage with respect to other insurance policies. Let me ask you this. Your client or the insured here also had their own primary liability insurance, did they not? Correct. The capital construction had a policy from Westfield, which also had another insurance provision that said it would apply to excess over a policy such as selectives that was covering it as an additional insured. So what the case law says is if I have an excess other insurance clause in one policy and an excess in the other policy, they cancel each other out. What we, however, did in this case, capital made a targeted tender because capital had different insurance policies, including country mutual. And under Illinois law, it has the right to target concurrent primary coverages and determine one of those policies should primarily respond to the loss. So when they made a targeted tender to selective, selective can't say, well, my policy says it's excess, therefore I don't have to defend. Instead, like any other liability policy, it has to respond to the targeted tender and solely become responsible for the loss, according to the John Burns construction case. I mean, John Burns construction is on point with the facts of this case, with the only exception being that the targeted policy had a pro rata clause in its other insurance condition. Our selective obviously has a different condition, but John Burns made it 100% clear that the other insurance condition in an insurance policy is inoperative. It doesn't work to defeat the targeted tender because another insurance condition requires two things. One is, is there other policies available, such as the Westfield policy? And then secondly, what does that other policy say? What John Burns said is when you target, the other insurance policy kind of disappears. It's no longer available because the insured has made a decision. I don't want to trigger my own policy. I don't want to pay extra premiums. Maybe I have other claims. Maybe there's issues that they want to save that policy for later. So they have the right to make a targeted tender to another insurance policy. But in that Burns case, can you tell us that Burns had the language of the policy here that this coverage is required to be primary and or contributory in the contract agreement or permanent? Did Burns ever discuss this particular provision that only the selective of this particular additional insured endorsement, but neither did the river village case and neither did the underwriters case. Those also are different. Well, are you sure you want to say that? Well, they are similar, but they are still different because in the rules that govern these, because all these policies have somewhat different other insurance conditions, but there are three general types of other insurance conditions. One's the excess, one's pro-rata sharing and one's the escape. They're sometimes worded differently, but they are fundamentally those three types of provisions. So John, you're correct that John Burns didn't have this condition in this language. John Burns says, you don't look at that language. It doesn't even come into play on a targeted tender. That only comes into play when there's a question of sharing between different insurance companies. But I will address also that point. The policy here selective says that it is excess over other available insurance. Unless coverage is required to be primary in the contract or agreement. It is our position here. This court can reverse based upon the simple fact that the contract required coverage under a general liability policy, which in and of itself means they were seeking primary coverage, which therefore falls within this condition of the selective policy. Unless the coverage is required to be primary in the contract. Well, it did require primary coverage because the contract required general liability coverage. There was also an excess policy. It makes no sense to say I'm going to cover you under two excess policies. It's a typical risk sharing procedure that the courts or the construction industry uses to kind of shift the liability down the chain of the contractors. And here they had a liability umbrella policy selective did in the insured. The subcontract required also indemnification. So the clear import of this agreement in the construction case was that liability coverage for capital was supposed to be primary. It's not supposed to be excess. Did you raise the, well, your opponent has indicated that multiple arguments you've I think one of them was this argument that you're making right now. No, I think what they are, what they argue, because we, we, we, in our summary judgment motions address the river village in the, in the difference. What, what they argued is we distinguish river village on the word specifically. Right. In your honor, I didn't mean to interrupt. Sorry. You finished judge. If they had cited a new case, I can distinguish this case on appeal. I distinguished, we distinguish this case in the circuit court as well. Maybe there wasn't a specific reference to the word specifically. I don't believe the waiver rule applies. We are distinguishing river village in order to also avoid having to get into whether it was correctly decided or not under John Burns. And the, and we also argued the West Bend case versus DJW, which also had the word, the same wording as the river village policy. The point that we are making on this is that under the West Bend case, the second district case, the court says that the, the general liability, the general contractor subcontract doesn't have to specifically use the words primary non-contributory or primary. If the agreement is clear that that's what they intended. Well, the second district case actually in the sub, in the contract actually indicated that there had to be general liability insurance. There had to be access coverage. There were four provisions in that contract, unlike contract here. Another question though is that are we really looking at, aren't we governed by what the insurance contract provides? Well, the insurance contract, because of the language in the insurance contract, which says unless coverage is required to be primary in the contractor agreement, we must by necessity reference the contract or agreement. In other words, this insurance policy condition requires that we look at the contract and we look in the, and on your point, you're correct. The second district case also had this extra, it said workers comp, general liability, excess, and I think it was automobile coverage. I don't believe that's a distinction that's worth a difference here, judge, because our case did have excess coverage and the court did say that the primary coverage can be referenced without using those words, and I think the reference to general liability is in and of itself evidence of the intent that primary coverage be provided. You're basically suggesting though that underwriters, the decision I authored, that that's wrong and that you don't really distinguish it. You just say that the River Village and the certain underwriters are both wrong, correct? They are. The underwriters case did not address targeted tender, so I think all right, so you're just distinguishing it. We distinguish it on this issue of the primary coverage or the specificity requirement in the language of the contract, and to the extent I believe that they reference the fact that there's excess liability, and it relied upon River Village, but the underwriters case did not involve the targeted tender rule. River Village. Counsel, could I ask a question here? Is the targeted tender rule really at issue here at all? I mean, when we talk about that rule, we say if you're a primary, if you offer primary coverage and you have another insurance provision, you can't use that other and then deal yourself with the other primary coverage, but we also know, and I think it's the Kojima case, but whatever case it is, I think we also know that targeted tender does not apply if it's a purely excess coverage. You can't convert something that's excess into primary just because the insurer decides to target you, so we know both of those things. That's a black letter law. It seems to me that that becomes the question is, was the selective policy excess or was it primary with an other insurance provision? Yes, your honor. Okay, so I don't know. I'm not sure why we need to be discussing targeted tender. I don't really think that has anything to... I think it just comes down to interpreting the selective policy, which of course then requires us to interpret the subcontract. Do you agree with that? I don't agree with everything you just said, your honor. The targeted tender rule does come into play. Kojima is 100% says that a true excess policy cannot be targeted, and it makes a distinction, and they take good pains to discuss the difference between a true excess and one that's excess by coincidence, which is what we're talking about here. Can I just explore that a little? I completely understand your position, and I see merit to it, but I guess what my question comes down to is, is this really an other insurance provision? When you talk about other insurance, you say, hey, we're primary unless somebody else is primary, and then we're excess. That's generally what those look like, but what we have here is a contract that says, hey, we are selective. You are insured. You're going to go out and make a contract now, and we don't necessarily know if it's going to be what that contract is going to say. If that contract requires primary coverage, then we'll be your primary. If it doesn't, we won't. It's not really dependent. The condition proceeding, if you like, is not dependent on the existence of other insurance, not directly at least. What it is directly dependent on is what does the subcontract say. Is that still the same thing as another insurance provision? It is, Judge. I have two points on this to make. Number one is, it's from the briefs. Selective doesn't even contest that it's another insurance provision. They admit it in their brief. It is an other insurance condition. Secondly, Your Honor, it is inartfully drafted, which again, you construe that against the insurance company. It says, this coverage shall be excess with respect to the person included as an additional insured semicolon. Any other insurance that person has shall be primary unless coverage is required, unless coverage under selective is to be primary. It's one sentence with a semicolon. It is the same function as an other insurance condition in another policy where it says, we are primary unless A or B applies. This says, basically, we are primary over other insurance that person or organization has. Because of the semicolon, especially, Judge, this is an other insurance condition. It stems from a primary general liability policy. I make that point because the River Village case, while in some ways takes what you're saying, your approach. It says, Kajima says excess coverage. It says, Alcan and West Bend and John Burns, those stemmed from a primary policy. Ours is an excess policy. My position is that this other insurance condition stems from, originates from a primary policy, not a true excess, not an umbrella. It is a true primary, fundamental primary policy. The targeted tender rule does come into play. Because this other insurance, let's say Westfield Capital had no other insurance policy. This policy would come in as a primary policy because there is no longer other insurance available for capital, so this coverage would apply. Are you sure about that? I believe, yes. I mean, is it Selective's fault if Capital didn't get other insurance? I mean, they write up a contract and they only owe a duty in that contract to their insurer, right? But they sort of hand off, if you want, their liability by saying, look, you're going to enter into a subcontract. I mean, my assumption here is this is a fairly standard policy Selective has. And they say, look, we don't know what your subcontract is going to look like. It might require us to be primary. It might not. So we're just going to put this language in saying, we're required to be this way, we'll be this. They require it to be that way, it'll be that. But they're not saying in any way that we're dependent on whether the general contractor goes out and gets other insurance. I mean, if you're an excess policy and the general contractor doesn't take out other insurance, I don't think you owe anything, do you? It depends on the language of the other insurance condition, I believe, but the policy is written for the subcontractor, you're right, it's to provide coverage for them. And it is typical in these construction industry that they have some other additional insurers. This is an endorsement intended to protect the other additional insurers. And so Capital has rights under the policy especially by virtue of this provision that says, if you're required by a written contract to add someone as an additional insured, you are an additional insured. Therefore, there is a duty upon that contract that applies to them. And when the claim potentially falls within the coverage, there's a duty to defend. Well, of course, I didn't mean to suggest that under the right but the triggering of their primary coverage duty is language in a subcontract that they don't purport to or in fact, have any control over. They're just saying, go get your construction contract. They're bidding out all these contracts, right? They're saying, okay, go out and the general is going to probably give you a contract that's already pre-written and you're either going to take it or not and tell us what that says. If it says we're primary, we'll be primary insurance. That doesn't strike me. It may be contained in a clause that has an other insurance language in it. And it may even have a title other insurance, I don't remember. But in its function, is that really an other insurance function? It doesn't seem like it to me. The one in this policy, we contend, your honor, is just like any other insurance condition because it adds capital as an insured simply by virtue of a contract requiring it. So now I'm insured. Then it talks about what happens if you have other insurance. The other insurance will be primary, this one says, unless it's specifically required to be, unless selective is specifically required or doesn't use the word specifically. So it operates just like another insurance condition in any other insurance policy. And in what we believe what River Village got wrong is by looking only at that provision and in the subcontract that you say, I mean, you're relying on the second district case, which is clearly distinguishable and we're not bound by anyway, but tell us again, to maybe wrap it up. What language is it precisely in the subcontract that you say supports the suggestion that the subcontract requires that the insurance here be primary and or not contributory? What is that language in the subcontract? The language is primary when it says and or, I only need to establish that the contract- Where in the subcontract does it say that? Could you just refresh my memory about what your actual language is? The language in the subcontract. Because in the subcontract, the type of insurance that they are- Is general liability. General liability. That's it. That is in the subcontract. All right. You have to have general liability insurance. All right. In the general liability insurance is fundamentally primary- You're starting to read things for us and interpreting language, but at the end of the day, all you have is that the subcontract requires general liability insurance. And the fact that there was an additional policy available under the umbrella coverage and also the certificate of insurance that showed that there was coverage under both of those policies. So if there's coverage under both of those policies, this- You know that certificate of insurance cannot increase in any way, change in any way the certificate of insurance does not increase or add to coverage at any time. No, but it's evidence of the party's agreement and this- But we don't go into evidence of an agreement by suggestions of parole evidence or anything else until there's an ambiguity. And we don't have that when you've argued it. But again, that was another argument that your opponent is going to say you brought up for the first time to us. So we don't start looking at these things unless there's an ambiguity. That's fairly well-established as well. And respectfully, Judge, the second district case, understand you consider it differently. I don't think there's any problem with that case. It's just not this case. That's all. But it makes it clear with the word agreement, which is different from contract, they look at not just the document, the one document and what it says. You look at also the, was there an agreement that capital be added as a primary coverage? And we're saying yes, because it references general liability because of this. So all the other things that I mentioned, there's excess coverage available. We have also indemnification obligations. All of this should be read together to show that there was intent for there to be primary coverage. And then not withstanding that, even if you disagree with me, we think the targeted tender rule controls because the targeted tender capital has the right, absolute right to select which of its primary coverages should respond to the loss. I'm not sure how much time I have left. You're way past your time, but why don't you reserve some time for rebuttal and we'll hear. Yes, could I interject one more question, Mr. Jenkins, before we leave you. The subcontract does not anywhere say what kind of insurance capital is going to be getting on its own, does it? The subcontract does not specify what capital is going to have. The requirement is for what the subcontractor is supposed to do. Right. I mean, you're saying that reading the agreement as a whole and there is the existence of this other insurance, but the contract doesn't say of that. Well, again, I'm sorry, the contract says what the subcontractor is supposed to get for capital. But it doesn't say that primary is going to have. I'm sorry. It doesn't say that the general contractor capital is going to get primary coverage. It doesn't say that they're going to get excess coverage. It doesn't say anything about what their intentions are. I'm sure they have a contract of their own with the landowner that says all that. But in the sub which we're interpreting, there's no indication in that contract of what capital is or is not doing with its own insurance. I agree with that, Judge. But the reference to general liability, I think, is sufficient. I understand. And I'll reserve time. But again, we ask for a reversal of the summary judgment. Let's hear the response. Your Honors, as a lawyer for selective, we ask that the summary judgment be affirmed. The simple matter is we want our contract language and forces written. Nothing more, nothing less. And we'd like it enforced along the lines of the court's prior rulings in River Village one and in certain underwriters. The one thing that I've been crawling out of my skin over throughout this whole oral argument is this notion that general liability insurance is fundamentally primary. No, general liability refers to the set of perils insured. So that'd be bodily injury, property damage, something like a slip and fall. Another type of insurance might be E&O insurance or professional liability insurance for like a med male. Then you've got D&O insurance. And again, you've got all the whole panoply of different types of insurances that ensure different perils. Then within a given subset of insurance, like general liability, you can have layers of insurance from primary layer, secondary access, first layer access, all the way up to, as my one friend described, stratospheric access. So that said, the fact that a subcontract requires general liability insurance, referring to a specific type of peril, just like worker's comp insurance refers to another type of peril, does not, in my opinion, dictate that the general liability is necessarily primary because that's an issue of the attachment point. Does the general liability attach at dollar one, dollar a million, or dollar 500 million? Mr. Glazer, is there case law that, because I've been wondering this myself. I tried to do a little looking of my own and didn't immediately find anything. Is there a case law that says that general liability doesn't automatically mean you're talking about the category of perils that are insured? I am not aware of it, to be frank. So how do we, forgive me for putting it this way, because I'm not suggesting you're not being truthful with us, but how do we take your word for it? If, I mean, is that- It's a survey of jurisprudence, I guess, on insurance. Being a guy like me who has to be an insurance coverage lawyer, a fate that I'd not voiced on anybody. No, no, no, no, no. And don't take me for suggesting that you are. But I've been very curious because one of the big things that your opponent argues is, hey, what else could general liability mean? It means primary. And it's not defined in the contract. And I didn't see any case law. We have a lot of insurance case law, and it talks about a lot of provisions and what they mean and don't mean. And I didn't see anything that describes general liability as meaning anything. Maybe it's in the state law. I haven't looked there, but that would be helpful to know if there is something that we're supposed to attach to that. I mean, it's great that you're saying it, but is there an industry standard or something in the Illinois insurance code or something that we could, in whichever way it leads, maybe it leads to your opponent's view, but are you aware of any source that we could look at? ISO form. If you're asking for an industry standard, ISO rights, standard form insurance contracts, general liability, they now have a professional liability. That was a new development in recent years. Generally speaking, the Illinois Department of Insurance then would approve different types of forms for different categories of peril risk, general liability, professional liability, homeowners and auto, all different perils. Generally speaking, the type of peril that is covered within a particular insurance contract like this one is found in the insuring agreement. And then the attachment point, meaning whether or not it's excess is typically addressed in the declarations, but also sometimes in the insuring agreement in the form of how they above an underlying loss, is it against suits or claims for primary? I guess this is a really good point you raise. I think there's a danger when we use shorthand to describe an insurance policy of letting the shorthand somehow control or prevail over the actual language of the policy. And it's good to have shorthand. I mean, you got to explain this stuff. We were all hanging out at a bar. You know, I mean, probably a pretty boring bar if we're talking about insurance coverage. You know, people would want me to break it down and they'd want me to use shorthand. So I'm not saying commercial general liability every five minutes. And so, you know, commercial general liability is just shorthand for what the insuring agreement says. And the insuring agreement applies to bodily injury and property damage. And, you know, collectively, both in the jurisprudence and also in the industry, we refer to that as general liability. And actually, for a while, it was first called general liability. Then they started calling it commercial liability. But now I'm kind of getting into esoteric history that nobody really cares about. So and the reason I'm bringing up this issue with the shorthand is that, you know, we've heard a lot from Country Mutual about this concept of true access. And there's nobody out there, to my knowledge, at least, and the insurance gods can strike me down if I'm wrong, is out there selling USDA prime true access policies. When you just talk about true access, and in the context of Kojima versus access by coincidence, I mean, it's just, again, shorthand for how does the contract language describe the attachment point meaning is $1 $1 million, $500 million of the particular insurance policy. And I really want to emphasize that Kojima did a nice job of explaining the differences between true access and access by coincidence. And then, interestingly, they said, Oh, there's also umbrella coverage. umbrella is typically a combination of access on one hand, and umbrella drop down on the other. So arguably speaking, umbrella is access by coincidence, because it can drop down if there's not that primary layer there. But that's an aside. The point being, though, that Kojima said, Okay, we got true access, we got access by coincidence, we got umbrella, but they never said, and our ruling applies only to true access, they simply described the label, using various, you know, secondary sources and case law out there to just give the reader background, and you know, a fortify, you know, an understanding of what they were getting at with the whole. Yeah, you sort of anticipated my next question. Because Kojima, you know, you look at Kojima, you look at john burns, john burns, I don't have it committed to memory, but that read very much like a primary coverage policy with another insurance provision. And Kojima, I think, literally said, umbrella access in the title, I don't think that even the parties were doubting in that case that it was an excess policy. And this clearly is neither of those. And I don't, and again, trying to look at some case law myself, I, I wasn't. But those aside, just more generally, you know, what does it mean to be an exit? You know, what, what words do we need to see for it to be access? The word access, I would submit, I mean, I wasn't even trying to be flip, but it's just like, I think the word access, you know, says exactly what it means, you know, we are access to other policies. And I think that's understood within the insurance community, so to speak, but also, you know, reflected in the jurisprudence in Illinois, that when a policy says access, it means it's going to apply after a predetermined amount of prior primary coverage has been exhausted by payment of judgment or settlement. And then again, I mean, back to this idea with the umbrella, you know, umbrella is also in a true access, because umbrella typically says, you know, we're access, but if you don't have primary coverage, ensuring the same, you know, body of risk, we've got up here in our umbrella, we'll drop down and be primary. So again, umbrella is also similar to the policy we have here, in that there are scenarios in which umbrella can be dollar one primary coverage. What else do I have? Oh, here's one other thing that I caught. So, you know, the drawn some country mutual between the policy language at issue in River Village and certain underwriters and the policy language at issue here on the access. And one thing I caught is that in River Village and certain underwriters, the policy language had other insurance available to you, and then the courts kind of zeroed in and said, well, you know, it's not available if you deselected it. Here, we actually have stronger language in favor of selectives position because it says other insurance that personal organization has, it doesn't even, you know, include the caveat available. And then though, to be fair, we don't say that it has to be specifically described as primary or not contributory in the contract. But as I pointed out, I think that is a distinction without a difference in this scenario, because there's no general reference to it. In the subcontract, there's no implied reference, there's no, you know, other other type of reference to it that is not specific, but nevertheless, a reference. Okay, any questions by any members of the panel? No. Okay, let's hear the rebuttal then. It's your and I will start with Justice Ellis, one of your questions about the selective policy and john burns case, I think I don't have the selective policy in front of me at the moment. Selective policy was issued for PNM mechanical. And I submit that there is a condition in the contract for PM and mechanical that has an other insurance provision says if this is, you know, if there's other primary insurance, etc, etc. The point being, is this selective policy is john burns, general liability policy. What we're interpreting here is an additional insured section is a special endorsement that was created, right, it is an endorsement to a policy that is a primary policy. And the question of, yes, there's different layers, there's umbrella, which may be different from excess. Kojima says, though, an excess policy is triggered over usually other scheduled insurance. So we are excess over a policy one policy two or so it's specifically purchased to be excess over other scheduled insurance, or the umbrella, maybe, you know, umbrella over other insurance that they may have for other locations, or who knows different circumstances. This policy that selective issued is a primary general liability policy. This endorsement, we're certainly interpreting our position is you cannot look at that endorsement and say this is an excess policy. Because Kojima says no. And john burns says no, you don't look at the other insurance condition. The drafting of this language is different from we've seen in some of these other other insurance conditions. But it is nonetheless intended to function as an other insurance condition. And excess policy would have language to the effect that we would have a duty to defend when limits of underlying insurance or what have you. This one has dollar one defense obligations. And then there's just this endorsement. So we primary policy for the named insured, especially this endorsement that is attached to it applies to the additional insured, which is capital, and provides coverage to capital. And if we look at the state auto case, which selective relies upon select state auto, which we think it was decided before Kojima, but the first ruling of state auto was there was a policy because there was a claim for coverage potentially within the additional insured endorsement. The next question was, was it excess or was it primary, there's a disconnect there, possibly. But the point is, this other insurance condition doesn't come into play. Unless you look at the Westfield policy, you look at country mutual policy, you look at selective policy, and you try to differentiate it. Are they compatible? Are they not compatible? And if the Westfield policies clearly access to capital, the selective policies access to capital, you cannot just look at the one policy. That's what the Ohio casualty case says progressive case, you cannot look at the other insurance condition to conclude whether it's excess. And then on top of that, we believe john burns then applies and says you don't even look at that. If I have a primary policy, which a we believe this one is, it is just like john burns, especially for the named insured PNM mechanic. And it is also supposed to be providing coverage to capital. When you target to that primary policy, john burns says forget what the other insurance clause says, because they have a right to go after whoever they want as a primary coverage. And therefore, we don't even look at the other policies to see if there's other insurance conditions, this one is triggered on a primary basis and should respond to the laws. And therefore, we think for those reasons, summary judgment should have been entered in favor of capital, because there was a targeted tender, there was, I think, under the language of the policy, and the intent that this be primary coverage. We believe if River Village is to be read as saying the targeted tender cannot be used to target and other policy with another insurance condition. It's a misreading, I think of Kojima. Oh, the council also said something about nothing. Kojima concludes after it discusses the difference between a prime or excess by coincidence, and a true excess policy, which is usually specifically purchased to be accessed. The course has given the clear distinctions between those two, they declined to extend the targeted tender to require one insured to vertically exhaust primary and excess before going to available primary policy. Council's credit, they don't, it's not 100% specifying, we believe this ruling says that a primary policy that has an excess other insurance condition, falls into the category of a primary policy. So it's a concurrent primary policy to which the targeted tender rule would apply. Because I can target to any one of the concurrent primary policies, you don't look at the other excess condition of the other insurance condition. So we do believe that Kojima stands for that proposition, it wasn't dicta. It was, I think, intended to make a difference between a umbrella policy, or a what the court calls the true excess policy. So I think the free, you know, they relied upon Justice Freeman's concurring opinion in a Roberts case, which he I think, also laid out, historically, some of the differences in these types of policies. So I guess, at the end of the day, Judge read together, we believe that that capital made a targeted tender, and that targeted tender at least should be upheld. If your honors does not believe that this targeted tender rule applies, we believe the interpretation of the insurance provision, in light of the contractual requirements, and the other evidence shows that there was clearly intent for there to be primary coverage. And then thirdly, the circuit court at least could not have resolved the question without also looking at the other two policies. And while selective says there's a waiver on that, we believe selective has the burden on summary judgment to prove that there was no contested question of fact, that they're entitled to judgment as a matter of law. And you cannot reach that judgment without looking at the other insurance conditions of the other policies. So for these reasons, Judge, we believe that the circuit court should be reversed. Summary judgment should be entered in favor of capital in the case remanded for further proceedings. Happy to answer any more questions. Any further questions by any members of the panel? Yeah. I'll just ask one, Mr. Jenkins. The same question I asked your opposing counsel. Is there any place we can look, this authoritative case law statute that talks about what we should read into the phrase general liability? I am not aware of anything specifically, but I would suspect couch on insurance or there's insurance treatises that may have some bearing on that. You're correct to the extent that general liability covers risks. And errors and omissions covers, maybe there's professional liability, legal malpractice and so forth. But the question, do those apply on a primary basis? Will they have a duty to defend? We will defend any claim that falls within or that seeks damages covered by this contract. The damages in this case would be bodily injury arising out of the operations of PNM Mechanical. Therefore, it's a primary coverage. If selective isn't insured, we will pay the bodily injury that arises out or that's caused by the operations of PNM Mechanical. That's a primary duty. The other insurance then comes in afterwards. Do you have other insurance? What kind is it? And that's a condition that is not supposed to be the cart before the horse, so to speak. That should not be the first analysis. Okay. Thank you. No, thank you. Thank you. Can I have one other suggested source if the court's interested? I think Alan Wentz treatises on insurance coverage, in my opinion, are my favorite. And then also... How do you spell that, counsel? Alan, A-L-A-N, then Wentz, W-I-N-D-T. He is an insurance coverage expert who purports to have read every published insurance decision since, I think, the 1950s. His name is A-L-L-A-N, last name Wentz, W-I-N-D-T. And then one other thing is I just noted, though, in River Village... You have no opportunity to argue with this point. If you wanted to give a citation, that's one thing, but to argue, the rules don't provide that at all. Okay. I want to thank you guys for a very interesting case, an interesting argument, and we will take the case and we'll decision shortly. Okay. The court is now adjourned and the justices should remain.